**LAW OFFICES OF MANN & ELIAS**
Imad Y. Elias (SBN 163655)
*imad@mannelias.com*
8383 Wilshire Blvd, Suite 750
Beverly Hills, CA 90211
Telephone: (323) 857-9500
Facsimile: (323) 857-9525

Attorneys for Plaintiff
RAHEL CAMPBELL

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAHEL CAMPBELL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>INFOSYS LIMITED and DOES 1 TO 100, INCLUSIVE<br><br>Defendants. | Case No. 2:26-cv-07176- FLA-RAO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT INFOSYS LIMITED'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: August 21, 2026<br>Time: 1:30 p.m.<br>Courtroom: 6B |

Plaintiff RAHEL CAMPBELL herein submits her Opposition to Defendant Infosys Limited's Motion to Compel Arbitration and Stay Claims.

//

//

## TABLE OF CONTENTS


I. Introduction. 4

II. Legal Standard. 5

A. State Law Applies for Enforcing an Arbitration Agreement. 5

B. Defendant Bears the Burden of Establishing the Existence of a Valid Arbitration Agreement. 6

III. Defendant Failed to Establish the Existence of a Valid Arbitration Agreement. 7

A. Defendant Failed to Establish Ms. Campbell Electronically Signed the "Mutual Arbitration Agreement." 7

B. Defendant Failed to Establish "Attachment 2 – Mutual Arbitration Agreement" Is the Arbitration Agreement Ms. Campbell Allegedly Accepted. 14

IV. Conclusion. 15

# TABLE OF AUTHORITIES

**Cases**


Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281 (1995) ............................ 5

AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) ................................ 5

Avery v. Integrated Healthcare Holdings, Inc., 218 Cal.App.4th 50, 59 (2013).......... 7

Banner Entertainment, Inc. v. Superior Court, 62 Cal. App. 4th 348 (1998)............... 6

Crippen v. Central Valley RV Outlet, Inc., 124 Cal. App. 4th 1159, 1164 (2004) ...... 6

Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996)............................ 5, 7

Engalla v Permanente Med. Group, Inc., 15 Cal.4th 951, 972 (1997)........................ 7

Espejo v. So. Cal. Perm. Medical Group, 246 Cal.App.4th 1047, 1060 (2016)..... 8, 10

Fabian v. Renovate Am., Inc., 42 Cal.App.5th 1062 (2019), .................................. 10

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ....................... 5, 6

Garcia v. Stoneledge Furniture LLC,102 Cal.App.5th 41 (2024)................... 11, 12, 13

Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010) ................. 5, 6

Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. 246, 251-52 (2017).............. 5, 6

Mitchell v. American Fair Credit Assn., Inc., 99 Cal.App.4th 1345, 1355 (2002) ...... 7

Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) ........................................................ 5

Romo v. Y-3 Holdings, Inc., 87 Cal. App. 4th 1153, 1158 (2001)............................. 6

Rosenthal v. Great Western Fin. Securities Corp., 14 Cal. 4th 394, 413 (1996).......... 6

Ruiz v. Moss Bros. Auto Group, Inc., 232 Cal.App.4th 836, 843 (2014) ........ 9, 12, 13

Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)............................................................................ 5


**Statutes**


9 U.S.C. § 2 ........................................................................................................ 5, 6

Civil Code section 1633.9 ........................................................................................ 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction.

Defendant's Motion fails because it did not establish Plaintiff agreed to arbitrate her claims. Rather than producing a signed arbitration agreement or competent evidence authenticating Plaintiff's alleged electronic acceptance, Defendant relies on a blank, unsigned arbitration agreement and the declaration of a Human Resources employee who began working for Defendant five years after Plaintiff accepted employment. Mr. West has no personal knowledge regarding Plaintiff's onboarding, the procedures used to obtain her alleged electronic signature, or the circumstances under which she purportedly agreed to arbitrate.

Nor does Defendant present evidence required by law to authenticate an electronic signature. It offers no evidence identifying the electronic platform used, the security procedures verifying Plaintiff's identity, the date or time of execution, the IP address, or any audit trail establishing that Plaintiff signed or accepted the agreement. Instead, Defendant offers conclusory assertions unsupported by the foundational facts necessary to establish contract formation.

Those evidentiary deficiencies are underscored by Ms. Campbell's declaration. She recalls accepting only her Offer Letter through the Candidate Portal, does not recall signing, reviewing, or even being presented with the purported Mutual Arbitration Agreement, does not recognize Exhibit C, retained her Offer Letter and onboarding documents but has no copy of an arbitration agreement, and never understood that accepting the Offer Letter constituted execution of a separate arbitration agreement.

Defendant also did not establish that Exhibit C is the arbitration agreement Plaintiff allegedly accepted. Mr. West never states it was retrieved from Plaintiff's personnel file, was the version in effect when Plaintiff was hired, or was the agreement she allegedly accepted. Accordingly, Defendant did not satisfy its burden of proving a valid arbitration agreement and the Motion should therefore be denied.

## II. Legal Standard.

### A. State Law Applies for Enforcing an Arbitration Agreement.

The threshold issue in any petition or motion to compel arbitration is whether the parties entered into a valid agreement to arbitrate. Although the Federal Arbitration Act ("FAA") embodies a liberal federal policy favoring arbitration, that policy does not arise until a court first determines that a valid arbitration agreement exists. Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Accordingly, a federal court exercising diversity jurisdiction applies ordinary state-law principles governing contract formation to determine whether the parties formed a valid agreement to arbitrate. First Options, 514 U.S. at 944; Perry, 482 U.S. at 492; Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010).

The FAA does not require enforcement of every arbitration provision. Rather, it places arbitration agreements "upon the same footing as other contracts." Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989). The Act therefore incorporates a savings clause providing that arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," so long as those defenses do not discriminate against arbitration. 9 U.S.C. § 2; Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). Thus, states remain free to regulate contracts—including arbitration agreements—through generally applicable principles of contract law. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281 (1995); Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. 246, 251-52 (2017).

Accordingly, before the FAA's policy favoring arbitration comes into play, the Court must first determine whether the parties actually formed a valid agreement to arbitrate under applicable state contract law. Granite Rock Co., 561 U.S. at 299

("Arbitration is strictly a matter of consent.").

**B. Defendant Bears the Burden of Establishing the Existence of a Valid Arbitration Agreement.**

A motion to compel arbitration is, in essence, an action seeking specific performance of an alleged agreement to arbitrate. Rosenthal v. Great Western Fin. Securities Corp., 14 Cal. 4th 394, 413 (1996). The party seeking to compel arbitration bears the burden of proving, by a preponderance of the evidence, the existence of a valid arbitration agreement. Id. at 413; Crippen v. Central Valley RV Outlet, Inc., 124 Cal. App. 4th 1159, 1164 (2004).

As the court explained in Banner Entertainment, Inc. v. Superior Court, 62 Cal. App. 4th 348 (1998):

> "**The petitioner bears the burden of establishing the existence of a valid agreement to arbitrate**, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. Ibid. The trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination on the issue of arbitrability." Id. at 356-357 (emphasis added).

Thus, the Court's first responsibility is to determine whether the parties formed a valid agreement to arbitrate. Romo v. Y-3 Holdings, Inc., 87 Cal. App. 4th 1153, 1158 (2001). Arbitration is fundamentally a matter of consent, not coercion, and a party cannot be required to submit to arbitration absent an agreement to do so. Granite Rock, 561 U.S. at 299; First Options, 514 U.S. at 943-45. Arbitration agreements are neither favored nor disfavored at the contract-formation stage; rather, they are placed on an equal footing with all other contracts and are subject to the same generally applicable principles of state contract law. Kindred Nursing, 581 U.S. at 251-52.

If the Court determines that a valid arbitration agreement exists, it must then consider any defenses to enforcement, including unconscionability or other generally applicable contract defenses preserved by the FAA's savings clause. 9 U.S.C. § 2;

Doctor's Associates, 517 U.S. at 687; Concepcion, 563 U.S. at 339. Where no valid agreement exists, or where grounds for revocation are established, the motion to compel arbitration must be denied.

**III. Defendant Failed to Establish the Existence of a Valid Arbitration Agreement.**

Defendant failed to establish an agreement to arbitrate even exists. The party petitioning for arbitration bears the burden of proving the existence of a valid arbitration agreement. Engalla v Permanente Med. Group, Inc., 15 Cal.4th 951, 972 (1997) Given that arbitration is "a matter of contract," the party seeking to compel arbitration must prove the existence of a "voluntary *agreement* to arbitrate." Avery v. Integrated Healthcare Holdings, Inc., 218 Cal.App.4th 50, 59 (2013) (italics in original). When the validity of the agreement is in dispute, arbitration is neither favored nor disfavored, but instead placed on an equal footing with other contracts. Mitchell v. American Fair Credit Assn., Inc., 99 Cal.App.4th 1345, 1355 (2002). If the Court finds there was no written agreement to arbitrate, the Court must deny Defendant's motion in whole.

Defendant's woeful evidentiary showing is also directly contradicted by Ms. Campbell's declaration. She explains the two-stage hiring process, recalls electronically accepting only her Offer Letter through the Candidate Portal, and distinctly remembers later traveling to Rhode Island for in-person onboarding where she physically signed employment paperwork. (*See* Campbell Decl. ¶¶2-5) She has no recollection of signing, reviewing, or even being presented with the Mutual Arbitration Agreement Defendant now seeks to enforce. (*See* Campbell Decl. ¶¶5-7)

**A. Defendant Failed to Establish Ms. Campbell Electronically Signed the "Mutual Arbitration Agreement."**

Defendant failed to meet its burden of proving Ms. Campbell actually signed the purported "Mutual Arbitration Agreement." The agreement submitted in support of the

Motion is highly suspect. First, the agreement is blank. It does not have the employee's name filled in on the form. It has no date, signature or printed name for the employee. Although signed by Defendant's representative, there is no date. As will be discussed below, there is no date anywhere on the purported agreement calling into question whether this agreement even existed, let alone in this form, at the time of Ms. Campbell's employment. Further, the Offer Letter states the "offer is contingent upon the following: (1) *signing*…. Attachment 2: Mutual Arbitration Agreement…." (*See* Document 7-1, pg.16, emphasis added) Yet, Defendant did not submit any evidence of Ms. Campbell's electronic or physical signature. Although the Offer Letter explicitly required a signature, Mr. West's declaration now claims "Plaintiff's employment with Infosys was contingent upon her *reading and agreeing* to Infosys's Mutual Arbitration Agreement" since Defendant has no proof of Ms. Campbell's signature. (*See* West Decl., ¶11, emphasis added). Mr. West's claim is plainly false and misleads the court.

It is Defendant's burden to establish the existence of the purported arbitration agreement by proving, by a preponderance of the evidence, that Ms. Campbell's electronic signature was authentic. Espejo v. Southern California Permanente Medical Group, 246 Cal.App.4th 1047, 1060 (2016). Defendant failed to meet that burden. The sole piece of evidence Defendant submitted in support of its Motion is the Declaration of Tarik West – who was not even employed by Defendant at the time Ms. Campbell allegedly signed the Mutual Arbitration Agreement. Critical to this Motion is the fact that Mr. West began working at Infosys in 2023. (*See* West Decl. ¶2) Defendant contends that Ms. Campbell signed the Mutual Arbitration Agreement in November, 2018, 5 years before Mr. West began working for Infosys. Thus, Mr. West has no personal knowledge regarding the circumstances leading up to Ms. Campbell allegedly signing the Mutual Arbitration Agreement.

Mr. West's lack of personal knowledge is especially significant because the only witness with firsthand knowledge of the onboarding process is Ms. Campbell. She

declares that she electronically accepted only her Offer Letter through the Candidate Portal; no one informed her that accepting the Offer Letter would also constitute execution of a separate arbitration agreement; and she has no recollection of signing Exhibit C either electronically or by hand. (*See* Campbell Decl. ¶¶4-7, 12)

Since Mr. West has no personal knowledge of the circumstances leading up to Ms. Campbell allegedly signing the Mutual Arbitration Agreement, it is not surprising that his declaration contains no details regarding how the document was transmitted to Ms. Campbell, who transmitted it, what time it was transmitted, what time Ms. Campbell accessed the document, the IP address from which she accessed the document, what time she signed it, who was with her and witnessed her signing the document or who was available to answer any questions she had about the document. Ms. Campbell's name, address and phone number appear on the November 7, 2018 Offer Letter and her email address appears on a blank document on page 27 of Document 7-1. Neither of these satisfy Defendant's high burden of establishing Ms. Campbell electronically signed the Mutual Arbitration Agreement.

"'Authentication of a writing means (a) the introduction of evidence *sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is* or (b) the establishment of such facts by any other means provided by law.'" Ruiz v. Moss Bros. Auto Group, Inc., 232 Cal.App.4th 836, 843 (2014). "'Civil Code section 1633.9 addresses how a proponent of an electronic signature may authenticate the signature - that is, show the signature is, in fact, the signature of the person the proponent claims it is. The statute states: "(a) An electronic record or electronic signature is attributable to a person if it was the act of the person. *The act of the person may be shown in any manner,* including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Espejo, 246 Cal.App.4th at 1061, quoting Ruiz, 232 Cal.App.4th at 843.

One way the employer may prove the electronic signature could only have been

made by the employee is to introduce evidence of the company's security protocol for signing electronic documents and for protecting the privacy of the employee's information with unique and private user names and passwords available only to that employee. Espejo, 246 Cal.App.4th at 1062. Defendant did not do that here. There is not even evidence that the document was transmitted or signed via electronic signature programs like DocuSign. There is no evidence of a unique envelope or transaction ID code or proof of the IP address confirming where the document was signed as it typical with electronic signature programs like DocuSign.

In Fabian v. Renovate Am., Inc., 42 Cal.App.5th 1062 (2019), the court affirmed the trial court's denial of a petition to compel arbitration on the grounds that the defendant failed to prove by a preponderance of the evidence that the plaintiff electronically signed the subject contract. Id. at 1063-1064. While the defendant contended the signature was authentic because it was obtained via DocuSign, the defendant failed to meet its burden because it "did not provide any evidence from or about DocuSign in its petition, reply, or supplemental declaration." Id. at 1069. The defendant "offered no evidence about the process used to verify Fabian's electronic signature via DocuSign, including who sent Fabian the Contract, how the Contract was sent to her, how Fabian's electronic signature was placed on the Contract, who received the signed the Contract, how the signed Contract was returned to Renovate, and how Fabian's identification was verified as the person who actually signed the Contract." Ibid. Even though the contract had an Identity Verification Code under the electronic signature, the court still found the defendant failed to prove by a preponderance of the evidence that the plaintiff electronically signed the subject contract because it failed to "explain how Fabian's electronic initials and signature were the 'act of Fabian' by offering evidence that DocuSign assigned Fabian a unique 'identity verification code' to initial and sign the Contract. Anderson did not explain the significance of the 15-digit alphanumeric characters or the words

'Identity Verification Code: ID Verification Complete' that appear below Fabian's electronic signature. By not providing any specific details about the circumstances surrounding the Contract's execution, Anderson offered little more than a bare statement that Fabian 'entered into' the Contract without offering any facts to support that assertion. This left a critical gap in the evidence supporting Renovate's petition." Id. at 1070.

Recently, in Garcia v. Stoneledge Furniture LLC,102 Cal.App.5th 41 (2024), the court affirmed a trial court's ruling denying a petition to compel arbitration because the declaration from the employer's Human Resources Information Systems Analyst failed to present sufficient details of the onboarding process to establish how he knew the plaintiff must have signed the agreement. Id.

In Garcia, an employee sued for sexual harassment and her former employer moved to compel arbitration. In support of that motion, the employer submitted a declaration of a Human Resources Information Systems Analyst that included the following evidence: (1) during onboarding, the employee created a unique ID and password using the program Taleo, (2) she clicked on a link in Taleo to review and sign an electronic arbitration agreement, (3) she signed her name electronically and also typed it on the agreement, (4) after the employee signed it and exited Taleo, no one could modify the agreement electronically, (5) "[a]ll personnel documents, including completed arbitration agreements, were stored electronically in a confidential and secure manner and were accessible only to management level employees or Human Resources employees who were granted access;" and (6) a copy of the arbitration agreement was attached to the HR representative's declaration. Id. at 45.

In response, the employee submitted a declaration stating, in essence, that: (1) she did not sign the agreement, (2) was not asked to sign it, (3) was never given a copy, (4) did not receive information about arbitration (including the fact she would waiving

her right to a jury trial), (5) did not recognize the name of the company representative on the agreement, and (6) did not know the HR representative who submitted the declaration. Id. at 47. The trial court denied the employer's motion. Id. at 48.

Affirming the trial court's ruling in its entirety, the Court of Appeal explained that it was "adequate" for the employee to deny signing the arbitration agreement to shift the burden back to the employer. Id. at 52. Crucial to its analysis, the court explained that the employee provided "additional evidence comparing the arbitration agreement to the other documents she signed on that same day and in that same manner; documents that bore indicia of reliability not evidenced by the arbitration agreement." Id. The court held that the employer failed to establish "that *only* [the employee] could have placed the electronic signature on the arbitration agreement." Id. at 53 (citing Ruiz, 232 Cal.App.4th at 844). It explained that the employer failed to "detail the security precautions regarding the use of the Taleo username and password; ***the arbitration agreement lacked a date, time, or IP address; and the agreement contained no indication it was created within the Taleo system***." Id. at 54. (emphasis added).

Ms. Campbell's declaration closely mirrors the declaration the court found sufficient in Garcia. She states that she does not recall signing any arbitration agreement, does not recognize Exhibit C, was never told she was waiving her right to a jury trial, never received a copy of the arbitration agreement, and did not know Mr. West at the time she accepted her employment. She further explains that she retained copies of her Offer Letter and Form I-9 documents but no arbitration agreement, despite routinely keeping employment documents, and that reviewing Exhibit C does not refresh her recollection. (*See* Campbell Decl. ¶¶4-12)

Similar to the cases discussed above, Defendant failed to meet its burden of proving there is an "electronic signature" belonging to Ms. Campbell. Critically absent from Defendant's Motion is evidence that (1) employees such as Ms. Campbell may

only log into Defendant's onboarding website by typing their username and unique password that employees personally create, (2) Defendant's Human Resources personnel only have access to view the employee's personal email address/username but do not have access to an employee's password, (3) because employees are required to create a password associated with their personal email addresses and need access to their personal email to log onto Defendant's onboarding website, no other employees could have accessed Plaintiff's onboarding documents at any time and (4) only Plaintiff could have logged-in to the onboarding website to execute her assigned documents.

Not only is there no evidence of an electronic signature verified through an IP address, a unique username and password or a description of the security procedures in place to protect Plaintiff's account and onboarding documents, there is no signature on the Mutual Arbitration Agreement. Mr. West does not explain how he knows that the agreement was transmitted to Ms. Campbell. He does not contend that there is a document bearing Ms. Campbell's signature on it, electronic or otherwise. Like the arbitration agreement in Garcia, the documents submitted by Defendant do not display a time, IP address, or provide any indication it was created within its portal. Mr. West does not even attempt to prove, let alone prove by a preponderance of the evidence, that Defendant has any security procedure to establish and verify the electronic signature on the arbitration agreement was "the act" of Ms. Campbell. See Civ. Code §1633.9 (a); see also Ruiz, 232 Cal.App.4th at p. 844 ["In the face of Ruiz's failure to recall electronically signing the 2011 agreement, the fact the 2011 agreement had an electronic signature on it in the name of Ruiz, and a date and time stamp for the signature, was insufficient to support a finding that the electronic signature was, in fact, 'the act of Ruiz.'"].) Since there is absolutely no evidence that the electronic signature was "the act of" Ms. Campbell as required by Cal. Civ. Code § 1633.9(a), Defendant failed to meet its burden.

//

### B. Defendant Failed to Establish "Attachment 2 – Mutual Arbitration Agreement" Is the Arbitration Agreement Ms. Campbell Allegedly Accepted.

Defendant failed to establish not only that Ms. Campbell agreed to arbitrate her claims, but also that Exhibit C is the arbitration agreement she allegedly accepted. This omission is fatal because Defendant bears the burden of proving the existence *and* terms of the agreement it seeks to enforce. Mr. West's declaration merely states that "[b]y accepting the Offer of Employment, Plaintiff specifically agreed to submit any dispute arising out of or relating to her employment with Infosys to final and binding arbitration" and that "[a] true and correct copy of the Mutual Arbitration Agreement, as maintained in Infosys's ordinary course of business, is attached hereto as Exhibit C." That testimony falls far short of establishing that Exhibit C is the version of the actual agreement Ms. Campbell purportedly accepted.

First, Mr. West began working for Infosys in 2023—approximately five years after Ms. Campbell allegedly accepted employment. Accordingly, he has no apparent personal knowledge regarding the arbitration agreement used during Ms. Campbell's onboarding or whether Exhibit C was the version presented to her.

Second, Mr. West never states that Exhibit C was retrieved from Ms. Campbell's personnel file. Nor does he state that he reviewed Ms. Campbell's employment records and confirmed that Exhibit C is the arbitration agreement she purportedly accepted. Instead, he merely states that Exhibit C is maintained in Infosys's ordinary course of business. That testimony does not establish that Exhibit C was the operative agreement in effect when Ms. Campbell was hired or that it is the agreement she allegedly assented to.

This distinction is significant. Employers routinely revise employment documents, including arbitration agreements, to reflect changes in the law. Indeed, arbitration agreements have undergone substantial revisions over the past decade in

response to evolving federal and California arbitration jurisprudence. Without competent evidence establishing that Exhibit C is the version presented to Ms. Campbell, Defendant has failed to authenticate the contract it seeks to enforce.

Ms. Campbell's personal records reinforce Defendant's failure of proof. She retained the Offer Letter she downloaded from the Candidate Portal together with her Form I-9 documents. Those files do not contain the purported Mutual Arbitration Agreement or any of the Offer Letter's referenced attachments. (*See* Campbell Decl. ¶¶9-10) If Attachment 2 had actually been presented as part of the onboarding process, one would reasonably expect it to appear alongside the very employment documents Ms. Campbell retained.

Defendant's evidentiary showing is therefore insufficient. At most, Mr. West authenticates that Exhibit C is *a* Mutual Arbitration Agreement maintained by Infosys. He does not establish that it is *the* Mutual Arbitration Agreement allegedly accepted by Ms. Campbell. Because Defendant failed to present admissible evidence establishing the actual terms of the agreement it seeks to enforce, the Court cannot determine whether a valid agreement to arbitrate exists or whether that agreement is enforceable. The motion should therefore be denied.

**IV. Conclusion.**

Based on the foregoing, Defendant's Motion to Compel Arbitration and Stay Claims should be denied.

DATED: August 7, 2026

**LAW OFFICES OF MANN & ELIAS**

By: ______________________

IMAD Y. ELIAS
Attorneys for Plaintiff
RAHEL CAMPBELL

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 8383 Wilshire Blvd, Suite 750, Beverly Hills, CA 90211.

On August 7, 2026, I served the foregoing document described as **PLAINTIFF'S OPPOSITION TO DEFENDANT INFOSYS LIMITED'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES** the interested parties in this action ☐ by placing a true copy thereof enclosed in a sealed envelope addressed as follows, ☒ by transmitting a .pdf file thereof to the following email addresses:

FAEGRE DRINKER BIDDLE & REATH LLP
Leah S. Chrisbacher, Esq.
*leah.chrisbacher@faegredrinker.com*
1800 Century Park East, Ste.. 1500
Los Angeles, CA 90067
T: 310-203-4000

Attorneys for Defendant INFOSYS LIMITED

☐ BY U.S. MAIL. I deposited the sealed envelopes with the United States Postal Service, with the postage fully pre-paid.

☒ BY EMAIL. I caused a copy of such document to be transmitted electronically to the individuals identified above at the email addresses set forth above.

☐ BY OVERNIGHT COURIER. I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier, with delivery fees pre-paid.

☒ STATE. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 7, 2026, at Los Angeles, California.

*Judith N. Balandran*
Judith N. Balandran